## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**THEAETTRA STEVENSON**,

      Plaintiff,

vs.                          No.    **CIV 02-0025 MCA/RLP (ACE)**

**CITY OF ALBUQUERQUE, THE
SOLID WASTE DEPARTMENT,**
and **RICHARD SEDILLO**, Manager
of the Parts Department of Solid Waste,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on ***Defendants' Motion for Summary Judgment*** [Doc. No. 31] filed on February 26, 2003.  Having considered the pleadings and exhibits of record, the relevant law, and otherwise being fully advised in the premises, the Court grants the motion in part as to all claims against Defendant Richard Sedillo, grants the motion in part as to Plaintiff's age-discrimination claim against all Defendants, and denies the motion in part as to Plaintiff's gender-discrimination claim against Defendants City of Albuquerque and the Solid Waste Department for the reasons set forth below.

## I.      BACKGROUND

On January 9, 2002, Plaintiff Theaettra Stevenson filed this civil action alleging that Defendants City of Albuquerque, the Solid Waste Department, and Richard Sedillo engaged

in gender discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e to 2000e-17, and age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 to 634, by declining to promote her to a position as a parts worker in the Parts Division of the City of Albuquerque's Solid Waste Department on or about August 15, 2000.  [Doc. No. 1.]  On February 26, 2003, Defendants moved for summary judgment on all of Plaintiff's claims.  [Doc. No. 31.]  The undisputed facts and evidence of record relating to Defendants' summary-judgment motion can be summarized in the light most favorable to Plaintiff as follows.

Plaintiff is a 54 year-old woman who began her employment with the City of Albuquerque in 1994.  From 1994 to 1996, she worked in the Parts Division of the Solid Waste Department as a data entry clerk.  While working in that position, she became familiar with the computer system that the Parts Division used to inventory its parts during that period.  While the majority of her work experience has been clerical in nature, Plaintiff also became knowledgeable about other aspects of the Parts Division's operations, including the names and physical locations of parts as well as the vendors and other personnel who worked in the parts room.  (Compl. ¶¶ 2-5; Answer ¶¶ 2-5; Stevenson Dep. at 14-15, 19, 43; Maestas Dep. at 10-13, 30-31; Benavidez Dep. at 10-11.)

In 1996, Plaintiff left her position in the Parts Division and became an accounting assistant in the Solid Waste Department's payroll office.  She continued to participate in periodic inventory work for the Parts Division after she became an accounting assistant.  In the Summer of 2000, she applied and was interviewed for a position as a parts worker in the

Parts Division.  Another individual who already worked in the Parts Division, Richard Aragon, also applied and was interviewed for that position.  (Stevenson Dep. at 6-7, 18-19; Maestas Dep. at 19-20; Sedillo Dep. at 58-61; Sedillo Aff. 9-25-00, ¶ 4.)

> The general duties of a parts worker are:
>
> To procure, receive, issue, identify, store and maintain inventory of parts, materials and tools.  To log parts issued to proper work orders and post orders into computer.  To research, locate and order parts for mechanics.  To provide technical support to the mechanical repair staff, shop foreman, user department liaisons and assigned supervisory or management staff.

(Ex. O to Pltf.'s Resp.; Benavidez Dep. at 12-13.)  The position requires two years of inventory control experience, a high-school diploma or GED, and a valid driver's license. The preferred set of knowledge, skills, and abilities for the position include a combination of clerical skills, including knowledge of computers, and physical skills, such as the ability to perform heavy manual labor and operate a forklift.  (Ex. O to Pltf.'s Resp.)

At the time of the hiring process, the parts workers' immediate supervisor was Richard Sedillo.  Mr. Sedillo's immediate supervisor was Bennie Maestas, and Mr. Maestas' immediate supervisor was Dennis Pratt.  Mr. Pratt delegated the task of interviewing candidates for the parts-worker position to Messrs. Maestas and Sedillo.  While Messrs. Maestas and Sedillo both participated in the interviews, the final decision was left up to Mr. Sedillo as he would be the direct supervisor of the individual selected to fill the position. (Sedillo Aff. 9-25-2000,  ¶¶ 1-3; Sedillo Dep. at 60-61; Maestas Dep. at 10, 20-24, 34-37; Pratt Dep. at 30-31.)

After the interviews, Mr. Maestas believed that Plaintiff was the most qualified candidate, and he made a recommendation to this effect to Mr. Sedillo and Mr. Pratt. While acknowledging that both Plaintiff and Mr. Aragon were qualified candidates, Mr. Sedillo disagreed with Mr. Maestas' recommendation and stated that Mr. Aragon had more directly applicable experience because, among other things, Mr. Aragon had previously worked in the Parts Division as a parts runner and was working as a parts worker on a temporary basis at the time the interviews were conducted. It is undisputed that Mr. Aragon had experience operating a forklift while Plaintiff did not have such experience. In addition, the Parts Division switched to a new computer-software program in 1999 or 2000, and the City contends that Plaintiff had less experience with this new program. (Sedillo Aff. 9-25-2000, ¶¶ 1-4; Sedillo Dep. at 60-61; Maestas Dep. at 22-24, 34-37; Pratt Dep. at 18.)

Mr. Maestas did not believe that these were the real reasons, or the only reasons, behind Mr. Sedillo's preference for Mr. Aragon. According to Mr. Maestas, Mr. Sedillo stated that he preferred Mr. Aragon over Plaintiff because Mr. Aragon "was a guy, he was a man." (Maestas Dep. at 36.)

Mr. Maestas also believed that Plaintiff was "discriminated against on the basis of her age." In this regard, Mr. Maestas claimed that Mr. Pratt made a statement to the effect that Plaintiff was "an older woman," implying that she may not have the ability to perform the requirements of the job with respect to lifting and moving parts. (Maestas Dep. at 42-43.)

In addition, Mr. Maestas claimed that Mr. Pratt did not want Plaintiff working in the parts room because, according to Mr. Maestas, Mr. Pratt believed that Plaintiff and Mr.

-4-

Maestas were "too close."  When asked to elaborate on what he meant by this statement, Mr. Maestas explained that he had filed a lawsuit against the City, in which Mr. Pratt was a defendant, and that Mr. Pratt did not want Plaintiff to assist Mr. Maestas in "gathering information that he did not want exposed."  (Maestas Dep. at 21-23, 35-37, 39-41.)

Mr. Sedillo selected Mr. Aragon to fill the position of Parts Worker in August 2000, and Plaintiff was advised that she was not selected to fill that position.  Plaintiff proceeded to file a claim with the EEOC and exhausted her administrative remedies prior to filing suit.  (Pretrial Order § IV(A), at 5; Sedillo Aff. ¶ 6; Stevenson Dep. at 26.)

## II.    ANALYSIS

### A.    Standard of Review

Under Fed. R. Civ. P. 56(c), the Court may enter summary judgment when the motion papers, affidavits, and other evidence submitted by the parties show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party as to that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986).  A fact is "material" if it might affect the outcome of the case.  See id. at 248.  Judgment is appropriate "as a matter of law" if the non-moving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

There are two methods by which Plaintiff may prove her claims under Title VII and the ADEA.  Under the first method, Plaintiff may prove her claims through direct evidence of unlawful discrimination.  There is some degree of conflict among and within the circuits as to exactly what constitutes "direct evidence" in this context.  See Costa v. Desert Palace, Inc., 299 F.3d 838, 851-54 (9th Cir. 2002) (en banc), aff'd, 123 S. Ct. 2148 (2003); Wright v. Southland Corp., 187 F.3d 1287, 1294-1303 (11th Cir. 1999).  In some cases, the Tenth Circuit has applied a narrow definition of what evidence is "direct."  See, e.g., Shorter v. ICG Holdings, Inc., 188 F.3d 1204, 1207 (10th Cir. 1999) (quoting Black's Law Dictionary 460 (6th ed. 1990) for the proposition that:  "Direct evidence is 'evidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption.'").  In other cases, the Tenth Circuit has defined the direct method of proving unlawful discrimination somewhat more broadly to include "'evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged [discriminatory] attitude.'"  Thomas v. Denny's, Inc., 111 F.3d 1506, 1512 (10th Cir. 1997) (quoting Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1471 n.5 (10th Cir. 1992)); accord Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 550 (10th Cir. 1999).

Under either of these definitions, "[s]tatements showing 'an existing policy which itself constitutes discrimination' are direct evidence of discrimination."  Heim v. State of Utah, 8 F.3d 1541, 1546 (10th Cir. 1993) (quoting Ramsey v. City & County of Denver, 907 F.2d 1004, 1008 (1990)).  In addition, "oral or written statements on the part of a defendant showing a discriminatory motivation" are "direct evidence of discrimination," Kendrick v.

-6-

Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000), provided that they "'actually relate to the question of discrimination in the particular employment decision, not to the mere existence of other, potentially unrelated, forms of discrimination in the workplace.'" Medlock, 164 F.3d at 550 (quoting Thomas v. Nat'l Football League Players Ass'n, 131 F.3d 198, 204 (D.C. Cir. 1997)).  On the other hand, mere "statements of personal opinion" that reflect a bias or prejudice which is not tied to the particular employment action at issue are not sufficient to directly prove a discriminatory motive because "the trier of fact would have to infer that the bias reflected in the statements was the reason behind the adverse employment action." Shorter, 188 F.3d at 1207.

For the purpose of defeating a motion for summary judgment, there is also a second method by which Plaintiff may prove her claims under Title VII and the ADEA.  This method employs the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  See Amro v. Boeing Co., 232 F.3d 790, 796 (10th Cir. 2000).  Under this framework, the employee must establish a prima facie case of unlawful discrimination in order to survive a motion for summary judgment.  If the employee establishes a prima facie case, then the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision that is alleged to be unlawful.  If the employer meets this burden, then summary judgment is warranted unless the employee can show that there is a genuine issue of material fact as to whether the reasons preferred by the employer are pretextual or whether his race, age, gender, or other

illegal consideration was a motivating factor in the employment decision.  See Reeves v.

Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147-49 (2000); Kendrick, 220 F.3d at 1226.

A plaintiff in an employment discrimination case can show pretext by presenting

evidence that the reasons proffered by the employer are so weak, implausible, inconsistent,

incoherent, or contradictory as to support a reasonable inference that the employer did not

act for those reasons.  See Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997).  In

particular, such pretext may be shown by evidence concerning the "prior treatment of

plaintiff; the employer's policy and practice regarding minority employment (including

statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating hiring

criteria); and the use of subjective criteria."  Simms v. Okla. ex rel. Dep't of Mental Health

& Substance Abuse Servs., 165 F.3d 1321, 1328 (10th Cir. 1999).  Pretext also may be

shown:

> (1) with evidence that the defendant's stated reason for the adverse
> employment action was false; (2) with evidence that the defendant acted
> contrary to a written company policy prescribing the action to be taken by the
> defendant under the circumstances; or (3) with evidence that the defendant
> acted contrary to an unwritten policy or contrary to company practice when
> making the adverse employment decision affecting the plaintiff.

Kendrick, 220 F.3d at 1230 (citations omitted).  Further, statements by a decision-maker that

directly reflect a discriminatory motive for an employment action also may be used to show

pretext under the McDonnell Douglas framework so long as there is some nexus between the

statements and the defendant's hiring decision.  See Shorter, 188 F.3d at 1209-10.

-8-

**B.    Plaintiff's Claims Against Defendant Sedillo**

Defendant Sedillo asserts that he is not a proper defendant in this action because neither Title VII nor the ADEA impose liability on individual employees.  This assertion is a correct statement of the law in the Tenth Circuit and the majority of other circuits.  See Haynes v. Williams, 88 F.3d 898, 901 (10th Cir. 1996); cf. Butler v. City of Prairie Village, 172 F.3d 736, 744 (10th Cir. 1999) (collecting cases).  In response to Defendants' summary-judgment motion, Plaintiff has not cited any contrary legal authority, nor has Plaintiff explained why Mr. Sedillo is a proper defendant under the facts of this case.  Accordingly, the Court determines that Defendant Sedillo is entitled to summary judgment on all of Plaintiff's claims.  He must be dismissed as an individual defendant in this case.

**C.    Plaintiff's Claims Against Her Employer**

In addition to naming Mr. Sedillo as a defendant, Plaintiff's *Complaint* names the City of Albuquerque and "the Solid Waste Department" as Defendants in this case.  [Doc. No. 1] Plaintiffs have presented no evidence or authority to support the proposition that "the Solid Waste Department" is a distinct legal entity separate from the City of Albuquerque.  Cf. Ketchum v. Albuquerque Police Dep't, 958 F.2d 381, 1992 WL 51481, at *2 (10th Cir. 1992) (unpublished disposition recognizing that departments of a municipality are not suable entities insofar as they "lack legal identities apart from the municipality"); Henry v. Albuquerque Police Dep't, 49 Fed. Appx. 272, 2002 WL 31379859, at *1 n.1 (10th Cir. 2002) ("The district court properly relied on an unpublished decision from this court holding that the Albuquerque Police Department lacks a legal identity apart from the City of

Albuquerque.").  Thus, for purposes of convenience, the Court will refer to the remaining two Defendants collectively as "the City."

The City asserts that it is entitled to summary judgment on Plaintiff's claims under Title VII and the ADEA on the grounds that Plaintiff has failed to meet her burden of proving unlawful discrimination based on age or gender under the <u>McDonnell Douglas</u> framework.  The Court first addresses Plaintiff's gender-discrimination claim under Title VII, and then turns to her age-discrimination claim under the ADEA

### 1.    <u>Plaintiff's Gender Discrimination Claim</u>

The relevant provision of Title VII of the Civil Rights Act "makes it an 'unlawful employment practice for an employer . . . to discriminate against any individual . . . , *because of* such individual's race, color, religion, sex, or national origin.'"  <u>Desert Palace, Inc. v. Costa</u>, 123 S. Ct. 2148, 2150 (2003) (quoting 42 U.S.C. § 2000e-2(a)(1)) (emphasis added).  In this case, Plaintiff has presented evidence that: (1) Defendant Sedillo was responsible for deciding whether to hire her for the parts-worker position; (2) Defendant Sedillo acknowledged that both Plaintiff and Mr. Aragon were "qualified candidates" for that position; and (3) Defendant Sedillo made a statement to the effect that he preferred to hire Mr. Aragon (instead of Plaintiff) because Mr. Aragon "was a man." (Sedillo Aff. 9-25-2000, ¶¶ 1-4; Sedillo Dep. at 60-61; Maestas Dep. at 34-37.)

Using the direct method of proving unlawful discrimination, this evidence is sufficient to defeat the City's summary-judgment motion on Plaintiff's gender-discrimination claim under Title VII.  For purposes of defeating summary judgment, Defendant Sedillo's own

statements in his affidavit can be used to show that he had the authority to make the hiring decision and that he considered both Plaintiff and Mr. Aragon to be qualified candidates. In addition, Mr. Maestas' deposition testimony to the effect that Defendant Sedillo said he preferred to hire Mr. Aragon instead of Plaintiff because Mr. Aragon "was a man" provides direct evidence of a discriminatory motive for Defendant Sedillo's decision to hire Mr. Aragon instead of Plaintiff.[1]

To the extent that there is a conflict among the various Tenth Circuit opinions that have attempted to define the phrase "direct evidence" in this context, the Court "should follow earlier, settled precedent over a subsequent deviation therefrom." Haynes, 88 F.3d at 900 n.4. Here the earlier, settled precedent is provided in Heim, 8 F.3d at 1546, which concluded that "[s]tatements showing 'an existing policy which itself constitutes discrimination' are direct evidence of discrimination." Heim cited two cases from the Eleventh Circuit as examples of such "direct evidence of discrimination." See id. (citing Thompkins v. Morris Brown Coll., 752 F.2d 558, 563-64 (11th Cir. 1985), and Bell v. Birmingham Linen Serv., 715 F.2d 1552 (11th Cir. 1983)).

---

[1]The statement attributed to Defendant Sedillo by Mr. Maestas constitutes a vicarious admission by a party opponent, and is not hearsay, because it concerned a matter within the scope of Defendant Sedillo's employment and was made during the course of his agency or employment relationship with the City. See Fed. R. Evid. 801(d)(2)(D); Pastran v. K-Mart Corp., 210 F.3d 1201, 1203 n.1 (10th Cir. 2000). Even if it were hearsay, the statement may fall under a hearsay exception if introduced for the purpose of showing the declarant's then existing state of mind. See Fed. R. Civ. P. 803(3); Wright, 187 F.3d at 1304 n.21. Thus, the Court may consider this statement in determining whether the City is entitled to summary judgment. See Pastran, 210 F.3d at 1203 n.1.

As the Eleventh Circuit later noted in <u>Wright</u>, 187 F.3d at 1297-98, the "direct evidence" at issue in <u>Bell</u> and <u>Thompkins</u> did not consist of the decision-maker's own testimony concerning his motives for hiring one person instead of another.  Rather, the "direct evidence" of discriminatory motivation in both <u>Bell</u> and <u>Thompkins</u> involved testimony by other witnesses concerning what the decision-maker said about his intentions with respect to the hiring decision.  See <u>Bell</u>, 715 F.2d at 1553 (noting that statements evincing discriminatory intent on the part of the decision-maker were introduced through the testimony of the plaintiff and a union steward who accompanied her); <u>Thompkins</u>, 752 F.2d at 561 (noting that statements evincing discriminatory intent on the part of decision-making personnel "were introduced through [the] plaintiff's testimony").  It follows that the statement attributed to Defendant Sedillo by Mr. Maestas is direct evidence of Defendant Sedillo's discriminatory motive in this case under the precedent established in <u>Heim</u> and the Eleventh Circuit cases cited therein.  See <u>Berroth v. Farm Bur. Mut. Ins. Co.</u>, 232 F. Supp. 2d 1244, 1249-50 (D. Kan.2002).

In the event that a narrower definition of "direct evidence" prevails, Plaintiff may still defeat the City's summary-judgment motion with respect to her gender-discrimination claim using the <u>McDonnell Douglas</u> framework.  Under this framework, Plaintiff must establish a prima facie case that "'there were promotional opportunities available that were filled by males, that she was qualified for promotion, and that despite her qualifications she was not promoted.'"  <u>Sprague v. Thorn Americas, Inc.</u>, 129 F.3d 1355, 1362 (10th Cir. 1997) (quoting <u>Nuff v. Int'l Paper Co.</u>, 656 F.2d 553, 558 (10th Cir. 1981)).

-12-

It is not disputed that a promotional opportunity was available in this case and that the promotional opportunity was filled by a male instead of Plaintiff.  The City contends, however, that Plaintiff cannot establish a prima facie case of gender discrimination because she was not qualified for the promotion to the position of Parts Worker.

The Court disagrees with this contention.  When viewed in the light most favorable to Plaintiff, the evidence of record supports a reasonable inference that Plaintiff met the minimum qualifications for the position of Parts Worker at the time she applied for the promotion.  In this regard, the Court notes Defendant Sedillo's admission in his affidavit that he considered both Plaintiff and Mr. Aragon to be "qualified candidates." (Sedillo Aff. 9-25-00, at ¶ 4.)  Having worked as data entry clerk in the Parts Division from 1994 to 1996, and having continued to perform inventory work after that date, Plaintiff appears to possess the two years of "inventory control experience" stated in the advertisement for the position. (Ex. A, O to Pltf.'s Resp.)  While the City points out her lack of experience driving a forklift, knowledge of "[o]perational characteristics of standard warehouse equipment including a forklift" is only listed under "preferred knowledge, skills and abilities" in the advertisement, and Plaintiff stated in her deposition testimony that she talked to a co-worker about taking a class offered by the City regarding forklifts in order to obtain this "preferred knowledge." (Ex. O to Pltf.'s Resp., Stevenson Dep. at 20.)

As Plaintiff has established a prima facie case of gender discrimination, the burden shifts to the City to produce evidence of legitimate, non-discriminatory reasons for its hiring decision.  See Kendrick, 220 F.3d at 1226.  The Court concludes that the City has met this

burden of production.  The evidence of record indicates that the job duties of a parts worker are about equally divided between clerical tasks (such as entering and retrieving information from a computer) and tasks that require physical labor (such as using a forklift to move parts).  The City had two qualified candidates for the position, one of whom may have been more adept at the clerical aspects of the job (namely Plaintiff), and one of whom may have been more adept at the physical aspects of the job (namely Mr. Aragon).  The fact that Mr. Aragon had more recent experience working in the Parts Division, and that Mr. Aragon had at least some relevant computer experience, while Plaintiff had no experience driving a forklift, are legitimate, non-discriminatory reasons why the City might have selected Mr. Aragon as the better candidate.  (Ex. O, Y, Z to Pltf.'s Resp.; Benavidez Dep. at 9-17; Aragon Dep. at 20-21.)

As the City has met its burden of producing evidence of a legitimate, non-discriminatory reason for the hiring decision, it is Plaintiff's burden to show that there is a genuine issue of material fact as to whether the reasons proferred by the City are pretextual or whether her gender was a motivating factor in the employment decision.  See Kendrick, 220 F.3d at 1226.  The Court concludes that Plaintiff has met her burden of showing such a genuine issue of material fact with respect to her gender-discrimination claim under Title VII.  In particular, Plaintiff has presented deposition testimony in which Mr. Maestas claims that the individual responsible for the hiring decision, Mr. Sedillo, stated that he preferred Mr. Aragon because "he was a man."  Mr. Maestas also testified that he participated in the

-14-

interviews and believed that Plaintiff was more qualified for the position.  (Maestas Dep. at 22-23, 35-37, 40-41.)

Even if Mr. Maestas' deposition testimony does not constitute direct evidence of unlawful discrimination, it may nevertheless support a reasonable inference of pretext with respect to Plaintiff's gender-discrimination claim because there is a clear nexus between the alleged statement by Mr. Sedillo and the City's hiring decision.  See Shorter, 188 F.3d at 1209-10; Berroth, 232 F. Supp. 2d at 1249-50.  According to Mr. Maestas, Mr. Sedillo preferred Mr. Aragon *because* "he was a man."   While the City has presented contrary evidence, it is up to the jury to decide which version of events is more credible.  For these reasons, the Court concludes that the existence of one or more genuine issues of material fact precludes summary judgment in the City's favor on Plaintiff's gender discrimination claim under Title VII.

### 2.      **Plaintiff's Age Discrimination Claim**

To establish a prima facie case of age discrimination in this context, Plaintiff must show that she "(1) was within the protected age group at the time of the failure to promote; (2) was qualified for promotion; (3) was not promoted; and (4) was passed over for an available promotion in favor of someone younger."   Furr v. AT & T Tech., Inc., 824 F.2d 1537, 1542 (10th Cir. 1987).  In this case, it is not disputed that Plaintiff was within the protected age group at the time she was passed over for the promotion, nor is it disputed that she was passed over in favor of someone younger.  As stated in the discussion of Plaintiff's gender-discrimination claim, she has met her burden of presenting a prima facie case that she

-15-

was qualified for the position of parts worker, and the City has met its burden of producing

evidence of a legitimate, non-discriminatory reason for selecting Mr. Aragon instead of

Plaintiff for this position.  Thus, the only remaining issue with respect to Plaintiff's age-

discrimination claim is whether the City's preferred reasons for hiring Mr. Aragon are

merely a pretext designed to cover up an unlawful, age-related motive.

 To support such an inference of pretext, Plaintiff points to the following deposition

testimony of Mr. Maestas:

> Q. Okay. Did you feel that Ms. Stevenson was discriminated against on the basis of her age when Mr. Aragon was given the job?
>
> A. Yes, I do.
>
> Q. And can you tell me what's the basis of your belief?  Were there any comments made about age or anything like that?
>
> A. Well, basically pertaining to the parts, her being able to lift parts, to move parts, etc., you know, that she was, a woman but an older woman and that she may not have the ability to perform the requirements of the job.
>
> Q. Who said she was an older woman?
>
> A. I believe that came from Dennis [Pratt].
>
> Q. And when did he say that?
>
> A. I can't – I can't give you a date on that.

(Maestas Dep. at 42.)  Although it is undisputed that the hiring decision in this instance was

made by Mr. Sedillo, other portions of Mr. Maestas' deposition testimony may vaguely

suggest that Mr. Pratt played some role in manipulating the hiring process to keep Plaintiff

-16-

from working in the parts room, albeit for reasons other than her age.  (Maestas Dep. at 22-23, 35-37, 40-41.)

The Court concludes that this evidence does not give rise to a reasonable inference that the City's proferred reasons for hiring Mr. Aragon instead of Plaintiff are merely a pretext designed to cover up an unlawful, age-related motive.  Although comments evincing an improper bias or prejudice may provide circumstantial evidence of a discriminatory hiring decision, see Shorter, 188 F.3d at 1209-10, the Tenth Circuit has emphasized that the statements in question must be "made by the decision maker," and that "there must be a nexus between the discriminatory statements and the [hiring] decision," McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998).

In this case, it is undisputed that "the final decision was left to" Mr. Sedillo and that "Mr. Sedillo decided to hire Mr. Aragon over the Plaintiff."  (Pltf.'s Resp. at 4-5.)  Plaintiff has not presented any evidence that Mr. Sedillo made any age-related statements or overheard any conversations in which such statements were made by other persons involved in the hiring process.  Rather, the only age-related statement identified by Plaintiff was allegedly made by Mr. Pratt, and Mr. Maestas testified that no one else was present at the time that statement was made.  Mr. Maestas also was unable to identify the date on which the age-related statement allegedly was made.  Under these circumstances, there is no way to reasonably discern a nexus between Mr. Pratt's alleged statement and Mr. Sedillo's hiring decision, and thus the statement must be treated as a "stray remark" rather than evidence of pretext.  See Stone v. Autoliv ASP, Inc., 210 F.3d 1132, 1140 (10th Cir. 2000).

The Court also declines to infer an age-related motive for the hiring decision from the vague suggestion in Mr. Maestas' deposition testimony that Mr. Pratt may have manipulated the hiring process to keep Plaintiff out of the Parts Division.  According to this portion of Mr. Maestas' deposition testimony, Plaintiff's age was not the reason why Mr. Pratt allegedly wanted to keep Plaintiff out of the Parts Division.  Rather, Mr. Pratt allegedly wanted to keep Plaintiff out of the Parts Division because he had an ongoing dispute with Mr. Maestas, and he thought Plaintiff and Mr. Maestas were "too close."  (Maestas Dep. at 20-21, 39-41.)  Neither Mr. Pratt's possibly mistaken perception of Plaintiff's relationship with Mr. Maestas, nor Mr. Pratt's alleged animosity toward Mr. Maestas, give rise to a reasonable inference of age discrimination in this case.  See McKnight, 149 F.3d at 1129 (noting that "poor business judgment" does not constitute evidence of pretext).  For these reasons, the City is entitled to summary judgment on Plaintiff's age-discrimination claim under the ADEA.

## III.    CONCLUSION

For the foregoing reasons, the Court concludes that Defendant Sedillo is entitled to summary judgment on all of Plaintiff's claims against him as an individual defendant, and that all Defendants are entitled to summary judgment on Plaintiff's age-discrimination claim under the ADEA.  As to Defendants City of Albuquerque and the Solid Waste Department, the Court further concludes that there exist one or more genuine issues of material fact which preclude summary judgment on Plaintiff's gender-discrimination claim under Title VII.

**IT IS, THEREFORE, ORDERED** that *Defendants' Motion for Summary Judgment* [Doc. No. 31] is **GRANTED IN PART** with respect to all of Plaintiff's claims against Defendant Sedillo, and all of Plaintiff's claims against Defendant Sedillo are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that *Defendants' Motion for Summary Judgment* [Doc. No. 31] is **GRANTED IN PART** with respect to Plaintiff's age-discrimination claim under the ADEA as to all Defendants.

**IT IS FURTHER ORDERED** that *Defendants' Motion for Summary Judgment* [Doc. No. 31] is **DENIED IN PART** with respect to Plaintiff's gender-discrimination claim under Title VII as to Defendants City of Albuquerque and the Solid Waste Department.

**SO ORDERED**, this 15th day of August, 2003, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge

-19-